Filed 4/12/23

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re ROBERT F., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JESSICA G.,<br><br>        Defendant and Appellant. | E080073<br><br>(Super.Ct.No. SWJ1900756)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Michael J. Rushton, Judge.  Affirmed.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Prabhath D. Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

1

California law implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) requires a county welfare department to ask extended family members about a child's Indian status under certain circumstances.[1]  In particular, subdivision (b) of Welfare and Institutions Code section 224.2 requires the department to interview extended family members "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306."  (Unlabeled statutory citations are to the Welfare and Institutions Code.)

Section 306 authorizes county welfare departments to take children into temporary custody "without a warrant" in certain circumstances.  (§ 306, subd. (a)(2).)  A department that takes a child into protective custody pursuant to a warrant does so under section 340, not section 306.  Thus, as the concurring opinion in *In re Adrian L.* (2022) 86 Cal.App.5th 342 (*Adrian L.*) cogently explained, because subdivision (b) of section 224.2 applies only when a child is placed in temporary custody under section 306, it does not apply when a county welfare department takes a child into protective custody pursuant to a warrant.  (*Adrian L.*, *supra*, at pp. 357-358 (conc. opn. of Kelley, J.).)

Jessica G. (Mother) appeals from the juvenile court's order terminating parental rights to her son, Robert F.  Relying on subdivision (b) of section 224.2, Mother argues that the Riverside County Department of Public Social Services (DPSS) failed to

---

[1]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many."  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

discharge its duty of initial inquiry, because DPSS did not ask various extended family members whether Robert has any Indian ancestry.

DPSS took Robert into protective custody pursuant to a warrant, so DPSS did not take Robert into temporary custody under section 306. Accordingly, DPSS had no obligation to ask Robert's extended family members about his potential Indian status under section 224.2, subdivision (b). We therefore affirm the order terminating parental rights.

BACKGROUND

In October 2019, DPSS received a referral alleging that Jonathan F. (Father) was emotionally and physically abusing nine-year-old Robert. A detective later contacted the social worker and said that he was investigating Father for the alleged sexual abuse of a five-year-old child. Mother was serving a prison sentence for attempted murder in Arizona, where she had been incarcerated since at least 2015.

DPSS sought a protective custody warrant for Robert's removal under section 340. The court issued the warrant in late November 2019, and Robert was taken into protective custody the next day, when Father was arrested on child sexual abuse charges.[2] DPSS filed a petition under section 300, subdivisions (b)(1), (d), and (g), alleging that Robert was at substantial risk of serious physical harm or illness, he was at substantial

---

[2] On our own motion, we augment the record to include the protective custody warrant issued by the juvenile court on November 26, 2019. (Cal. Rules of Court, rules 8.155(a)(1)(A), 8.410(b)(1).) (When we sent the parties our tentative opinion in this matter, we also provided them with a copy of the protective custody warrant and gave them the opportunity to file any supplemental briefing regarding the court's augmentation on its own motion.)

risk of sexual abuse, and the parents were unwilling or unable to provide care or support for him.

Father denied having any Native American or Indian ancestry when DPSS interviewed him for the detention report, and he filed a Parental Notification of Indian Status form (ICWA-020) indicating that he did not have any Indian ancestry. DPSS was unable to interview Mother.

At the detention hearing in December 2019, the court asked Father whether it was true that he had no Indian ancestry, and Father said that it was. Mother was not present, so the court did not ask her about Indian ancestry. The court detained Robert from the parents and found that ICWA did not apply, but it stated that DPSS needed to continue the ICWA investigation.

Mother denied having any Indian ancestry when DPSS interviewed her for the jurisdiction/disposition report. At the combined jurisdiction and disposition hearing, Mother also told the court that she did not have any Indian ancestry. The court found the allegations of the petition to be true, took jurisdiction over Robert, and removed him from the parents' custody. It ordered reunification services for Father but denied Mother reunification services under section 361, subdivision (e)(1) (parent incarcerated and services would be detrimental to child). The court found that ICWA did not apply to Robert.

The court continued Father's services at the six-month review hearing and terminated them at the 12-month review hearing. It found that ICWA did not apply at both hearings. Early in the case, DPSS placed Robert with paternal cousin, and DPSS

4

later placed the child with paternal great-grandparents. DPSS also explored placing Robert with the maternal grandmother and a maternal great-aunt. There is no indication in the record that DPSS asked those extended family members about potential Indian ancestry.

The court continued the section 366.26 hearing several times, and the hearing eventually occurred in October 2022. The court found that Robert was likely to be adopted and terminated parental rights. Although the court did not make an express ICWA finding at the section 366.26 hearing, the order terminating parental rights "was 'necessarily premised on a current finding by the juvenile court'" that ICWA did not apply to Robert. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 740.)

## DISCUSSION

To implement ICWA, the county welfare department and the juvenile court must determine whether a case involves an Indian child. The department and the court thus have an "'affirmative and continuing duty to inquire' whether a child in a dependency proceeding 'is or may be an Indian child.'" (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*), quoting § 224.2, subd. (a).) "The duty to inquire consists of two phases— the duty of initial inquiry and the duty of further inquiry." (*Ibid.*) This case does not concern the duty of further inquiry, which arises only if the court or the department has "reason to believe that an Indian child is involved." (§ 224.2, subd. (e).)

"The duty of initial inquiry applies in every dependency proceeding." (*In re Ricky R.*, *supra*, 82 Cal.App.5th at p. 678.) The department's "duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or

5

neglect whether the party has any information that the child may be an Indian child."

(§ 224, subd. (a).) In addition, "[f]ederal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.' (25 C.F.R. § 23.107(a) (2022).)" (*Ricky R.*, at pp. 678-679.) Similarly, "[s]tate law requires the court to pursue an inquiry '[a]t the first appearance in court of each party' by asking 'each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' (§ 224.2, subd. (c).)" (*Ricky R.*, at p. 679.)

In some cases, California law requires the county welfare department to do more at the initial inquiry stage. Specifically, under subdivision (b) of section 224.2, "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306," the department's obligation includes asking the "extended family members" about the child's Indian status.[3]

In this case, DPSS did not take Robert into temporary custody under section 306. Rather, DPSS obtained a protective custody warrant under section 340. That difference matters because the statutory provision on which Mother relies says that it matters.

---

[3]    The provision states in full: "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)

(*Adrian L.*, *supra*, 86 Cal.App.5th at p. 355 (conc. opn. of Kelley, J.).)  The inquiry

obligation prescribed by subdivision (b) of section 224.2 was not triggered.

The *Adrian L.* concurrence explains in detail why the provision did not apply here.

First, the language of the statute is plain and therefore controls.  (*Adrian L.*, *supra*, 86

Cal.App.5th at pp. 355-358 (conc. opn. of Kelley, J.).)  The Legislature intended to

impose a duty to question extended family members if the child was placed into the

county welfare department's temporary custody under section 306.  And "[p]lacing a

child into 'temporary custody of a county welfare department pursuant to [section] 306'

is fundamentally different from taking a child into 'protective custody' under section

340." (*Adrian L.*, at p. 357 (conc. opn. of Kelley, J.).)

Section 306 permits a social worker to take a child into temporary custody

"without a warrant" in emergency situations—namely, when "the social worker has

reasonable cause to believe that the child has an immediate need for medical care or is in

immediate danger of physical or sexual abuse or the physical environment poses an

immediate threat to the child's health or safety."  (§ 306, subd. (a)(2).)  Peace officers

may also take children into temporary custody without a warrant when similar exigent

circumstances exist (§§ 305, 305.6, subd. (a)), and section 306 also permits the social

worker to take temporary custody of a child "who has been delivered by a peace officer."

(§ 306, subd. (a)(1).)  By contrast, section 340 requires neither imminent danger nor the

threat of physical harm for the court to issue a warrant.  (*Adrian L.*, *supra*, 86

Cal.App.5th at p. 357 (conc. opn. of Kelley, J.).)  Rather, before the department has filed

a section 300 petition, the court may issue a protective custody warrant on the basis of "a

substantial danger to the safety or to the physical or emotional health of the child." (§ 340, subd. (b)(2).)

Second, reading subdivision (b) together with other subdivisions of section 224.2 highlights the Legislature's intent to apply subdivision (b) narrowly. Other subdivisions addressing the duty of inquiry apply in all dependency cases without limitation. The subdivision (a) "affirmative and continuing duty to inquire" applies whenever a section 300 petition may be or has been filed, and the subdivision (c) duty of the court to ask about a child's Indian status applies "[a]t the first appearance in court of each party." (§ 224.2, subds. (a), (c).) The broader language used in those subdivisions "underscores that the more limited expression the Legislature chose to use in establishing the duty of initial inquiry in section 224.2, subdivision (b) was a conscious decision." (*Adrian L.*, *supra*, 86 Cal.App.5th at p. 358 (conc. opn. of Kelley, J.).)

Third, the expanded duty of initial inquiry prescribed by subdivision (b) of section 224.2 makes sense, in light of other ICWA-related requirements imposed by section 306. (*Adrian L.*, *supra*, 86 Cal.App.5th at p. 364 & fn. 16 (conc. opn. of Kelley, J.).) The warrantless detention of an Indian child under subdivision (a) of section 306 triggers especially time-sensitive requirements: If the social worker "knows or has reason to believe" that the Indian child is already a ward of a tribal court or resides or is domiciled on the reservation of a tribe with exclusive jurisdiction, the county welfare department must notify the Indian child's tribe "no later than the next working day" that the department took the child into temporary custody. (§ 306, subd. (d).) And if the tribe confirms that the Indian child is a ward of the tribal court or is subject to the tribe's

8

exclusive jurisdiction, the department must transfer custody of the child to the tribe within 24 hours after learning of that confirmation. (*Ibid.*) Those same time constraints do not apply in the absence of a detention under subdivision (a) of section 306. (§ 306, subd. (d).) Instead, in other cases, whenever the court receives information suggesting that an Indian child is already a ward of a tribal court or subject to a tribe's exclusive jurisdiction, the court "shall expeditiously notify" the tribe. (§ 305.5, subd. (b).) Thus, identifying an Indian child subject to the exclusive jurisdiction of the tribe is particularly urgent in warrantless removal cases, when the social worker is acting without court authorization.

Fourth, even if the Legislature's intent were not clear from the language of the statute, the legislative history would support our interpretation. Assembly Bill No. 3176 (2017-2018 Reg. Sess.) (Assembly Bill 3176) added subdivision (b) of section 224.2, effective January 1, 2019. An early version of Assembly Bill 3176 stated that "[w]hen a child is taken into temporary custody," the department had to ask "the child, the parents, legal guardian, and Indian custodian" about the child's Indian status. (Assem. Amend. to Assem. Bill No. 3176 (2017-2018 Reg. Sess.) May 25, 2018, § 4.) That version of the bill did not require the department to ask extended family members about a child's Indian status as part of the initial inquiry, and it did not contain the limiting language regarding section 306. (*Adrian L.*, *supra*, 86 Cal.App.5th at p. 359 (conc. opn. of Kelley, J.).) When the Legislature amended the bill to add the obligation to ask extended family members, it also added "the prefatory limitation 'when the child is taken into temporary custody pursuant to section 306.'" (*Id.*, at pp. 358-359 (conc. opn. of Kelley, J.), quoting

9

Sen. Amend. to Assem. Bill No. 3176 (2017-2018 Reg. Sess.) June 18, 2018, § 4.) "In other words, the Legislature expressly rejected having the inquiry prescribed in section 224.2, subdivision (b) apply in *all* cases when a child is placed into temporary custody and limited such inquiry to cases where a child is placed in temporary custody 'pursuant to section 306.'" (*Adrian L.*, at p. 359 (conc. opn. of Kelley, J.).)

Another feature of the legislative history supports our conclusion that subdivision (b) of section 224.2 does not apply here. When the Legislature proposed the limiting language referring to section 306, it also proposed to amend section 306 by adding a cross-reference to the inquiry required by section 224.2, subdivision (b). (*Adrian L.*, *supra*, 86 Cal.App.5th at p. 361 (conc. opn. of Kelley, J.).) That cross-reference became part of the enacted law. (§ 306, subd. (b).) At the same time, the Legislature did not propose any similar amendments to section 340, which contains no cross-reference to section 224.2. (*Adrian L.*, at p. 361 (conc. opn. of Kelley, J.).)

Moreover, the legislative history shows that the Legislature intended to track federal guidelines for implementing ICWA (the Bureau of Indian Affairs (BIA) guidelines), which recommend initial inquiry of extended family members in emergency situations but not in all cases. (*Adrian L.*, *supra*, 86 Cal.App.5th at pp. 361-365 (conc. opn. of Kelley, J.); see U.S. Dept. of the Interior, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016) (BIA Guidelines), available at <https://www.bia.gov/sites/default/files/dup/assets/bia/ois/pdf/idc2-056831.pdf>.) We have strong evidence that the Legislature considered the BIA guidelines: A legislative committee report on Assembly Bill 3176 expressly referred to the guidelines, and several

10

provisions of the bill added at that time track parts of the BIA guidelines. (Sen. Judiciary Com., Rep. on Assem. Bill 3176, as amended June 18, 2018, at pp. 6-7; *Adrian L.*, at pp. 361-362 (conc. opn. of Kelley, J.).) The BIA guidelines recommend "inquiry of extended family 'as part of the emergency removal and placement process' and do[] not suggest that such inquiry is required in any other circumstance." (*Adrian L.*, at p. 362 (conc. opn. of Kelley, J.), quoting BIA guidelines at p. 28.) And the guidelines reflect that under federal law, emergency removal situations are cases in which the child is facing imminent physical harm and may be removed without prior court authorization. (BIA guidelines at pp. 23-24; *Adrian L.*, at pp. 362-363 (conc. opn. of Kelley, J.); see also 25 U.S.C. § 1922 [defining emergency removal as "necessary to prevent imminent physical damage or harm to the child"].)

The BIA guidelines thus describe the same type of emergency situation that must exist for a social worker to take a child into temporary custody under section 306. (*Adrian L.*, *supra*, 86 Cal.App.5th at p. 363 (conc. opn. of Kelley, J.).) The standard for issuance of a protective custody warrant under section 340 is lower, and such a removal "would not be an 'emergency removal' under federal law." (*Adrian L.*, at pp. 363-364 (conc. opn. of Kelley, J.).) Our Legislature recognized that distinction: Section 306 declares that removal of an Indian child under that section "'shall be considered an emergency removal under' federal law," but section 340 contains no reference to emergency removals. (*Adrian L.*, at p. 364, quoting § 306, subd. (c).) "In short, in crafting the narrow inquiry duty in section 224.2, subdivision (b) that applies to children removed pursuant to section 306, the Legislature was simply creating a duty that tracked

11

federal guidelines for emergency removals." (*Adrian L.*, at p. 364 (conc. opn. of Kelley, J.), fns. omitted.)

Finally, the legislative reports do not mention expanding the duty of initial inquiry to include extended family members in every dependency case. (*Adrian L.*, *supra*, 86 Cal.App.5th at p. 365 (conc. opn. of Kelley, J.).) In contrast, when the Legislature imposed "a duty of inquiry that went beyond federal standards, as it did by adding the requirement of 'further inquiry' when there is 'reason to believe' a child may be an Indian child, the associated legislative reports highlighted the fact." (*Id.* at p. 366 (conc. opn. of Kelley, J.).) The Legislature's failure to mention an expanded duty of initial inquiry applicable in every case underscores that it did not intend any such departure from federal law. (*Ibid.*)

We emphasize that nothing in this opinion is intended to limit DPSS's or the court's duty of inquiry prescribed by subdivisions (a) and (c) of section 224.2. As already explained, those subdivisions describe the duty of inquiry that arises in every dependency case. But the plain language of those subdivisions does not require the county welfare department or the court to question extended family members as part of the initial inquiry in every case. And although case-specific circumstances may require the department to interview extended family members under one of those subdivisions, Mother has not identified any such circumstances here. For instance, if the parents deny any Indian ancestry, but a family member later contacts the social worker and volunteers that the family has Indian ancestry, then the department cannot ignore that claim. It has a duty to follow up on the information as part of its "affirmative and continuing duty to

12

inquire." (§ 224.2, subd. (a).)  Similarly, if a parent states that they do not know whether they have Indian ancestry and directs the social worker to ask a particular relative who would know, then the department must follow up with that relative as part of its affirmative and continuing duty of inquiry.  It cannot ignore the information.  Nothing similar occurred in this case.

To summarize:  Subdivision (b) of section 224.2 requires a county welfare department to ask extended family members about a child's Indian status only if the department has taken the child into temporary custody under section 306.  Because section 306 played no role in Robert's removal, subdivision (b) of section 224.2 does not apply.  (*Adrian L.*, *supra*, 86 Cal.App.5th at p. 357 (conc. opn. of Kelley, J.).)  Mother therefore has not shown that DPSS failed to discharge its duty of initial inquiry.

## DISPOSITION

The order terminating parental rights is affirmed.

CERTIFIED FOR PUBLICATION

MENETREZ
                                                                                                        J.

We concur:

MILLER
              Acting P. J.
FIELDS
                            J.

13